IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VERSIE L. DUPONT, general administrator and administrator *ad prosequendum* of the estate of LAKEISHA R. MAYNER-DUPONT, deceased, and VERSIE L. DUPONT, individually, | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | Civil No. 15-3752 (JBS/AMD) |
| v. | |
| UNITED STATES OF AMERICA, et al. | <u>OPINION</u> |
| Defendants. | |

APPEARANCES:

Michael S. Berger, Esq.
ANDRES & BERGER, P.C.
264 Kings Highway East
Haddonfield, NJ 08033
     Attorney for Plaintiffs

Paul J. Fishman, United States Attorney
     By: Jordan Milowe Anger, Assistant U.S. Attorney
OFFICE OF THE U.S. ATTORNEY
970 Broad Street, 7th Floor
Newark, NJ 07102
     Attorney for the United States

**SIMANDLE**, Chief Judge:

I.   **INTRODUCTION**

     After Lakeisha Mayner-Dupont died from cervical cancer, her husband, Versie Dupont, filed a wrongful death suit against the United States for the allegedly negligent actions of CAMcare Health Corporation ("CAMcare"), the federally-funded hospital

that diagnosed and treated her, bringing claims under the Federal Tort Claims Act ("FTCA"). Presently before the Court is a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), filed by Defendant the United States. [Docket Item 10.] Because CAMcare is a federally qualified health center, CAMcare and the employees who are named in this suit are considered employees of the Government for purposes of the FTCA, and the United States answers for the actions of CAMcare.

The United States argues that the Court has no jurisdiction to hear this suit because CAMcare, a corporation with IRS section 501(c)(3) status which serves the underprivileged population of Camden, qualifies as a "charitable organization" under the New Jersey Charitable Immunity Act ("NJCIA"), N.J.S.A. 2A:53A-7(a), and is therefore absolutely immune from liability. Alternatively, Defendant seeks partial summary judgment and asks the Court to find that CAMcare is a qualified entity under N.J.S.A. 2A:53A-8, which caps recovery against "nonprofit hospitals" at $250,000. Plaintiff Versie Dupont contends in opposition [Docket Item 14] that CAMcare is not entitled to immunity because it is not truly a nonprofit organization within the meaning of the NJCIA and seeks additional discovery on the issue of whether CAMcare is a "nonprofit hospital."

2

For the reasons set forth below, the Court holds that CAMcare is not a charity under N.J.S.A. 2A:53A-7(a). As such, the United States is not absolutely immune from suit, and the motion to dismiss will be denied. Because Plaintiff has not had any chance to seek discovery to investigate CAMcare's nonprofit hospital status, Defendant's motion for summary judgment is premature and will be denied without prejudice to renewal at a later stage in the litigation.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's Complaint [Docket Item 1] is straightforward. On or around December 11, 2009, the decedent, Lakeisha R. Mayner-Dupont entered treatment at CAMcare Health Corporation ("CAMcare"), a federally-supported health facility and community health center located in Camden, New Jersey. The doctors and nurses who treated her, who are named as defendants in the Complaint, allegedly failed to perform appropriate tests and delayed in diagnosing Mayner-Dupont with cervical and/or vaginal cancer. (Compl. ¶¶ 12-13.) By the time she was diagnosed, Mayner-Dupont's cancer was already at stage III-B. (Id. ¶ 13.) The Complaint alleges that the delay in diagnosis and treatment fell below the applicable standards of care, caused Mayner-Dupont to undergo extensive medical treatment, and ultimately caused her death on September 16, 2014. (Id.)

3

On June 4, 2015, approximately nine months after Mayner-Dupont's death, Mayner-Dupont's husband, Versie L. Dupont, as the general administrator and administrator *ad prosequendum* of the estate of Lakeisha Mayner-Dupont, filed this Complaint against six named doctors and nurses at CAMcare[1] and against the United States for the actions of CAMcare. Various unidentified John Doe and Jane Roe employees and employers are also defendants. (Id. at 1.) Dupont brings claims against each defendant under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), for wrongful death, pain, and suffering under N.J.S.A. 2A:15-3 & 2A:31-1 et seq. (Id. Counts One to Ten.) Dupont also brings a claim for himself for loss of consortium. (Id. Count Eleven.)

The United States, which answers for the actions of CAMcare and its employees, filed a motion to dismiss for lack of subject matter jurisdiction, asserting absolute charitable immunity under the NJCIA. Alternatively, the Government seeks partial summary judgment on the question of whether CAMcare is a "nonprofit hospital" entitled to a damages cap under NJCIA.

---

[1] In addition to the United States, the Complaint names the following individuals as defendants: Eytan Barnea, M.D.; Eric Chang, D.O.; Marilyn Gordon, M.D.; Shameka Bussie, R.N.; Dorian Jackson, R.N.P.; and Anais Ortiz, R.N. In addition, the Complaint includes as defendants unidentified John Does 1-15, Jane Roes 1-15, and John Doe employers 1-15. (Compl. at 1.)

Plaintiff contends that the immunities and defenses under the NJCIA are not available to the United States, and that even if they were, CAMcare does not qualify for its protections.[2]

The Court must decide: (1) whether the United States, as the defendant in this suit, can assert defenses and immunities available to CAMcare under the NJCIA; (2) if so, whether under the NJCIA, specifically N.J.S.A. 2A:53A-7(a), CAMcare is a "charitable organization" entitled to absolute immunity; and (3) if not, whether partial summary judgment may still be granted in Defendant's favor on the issue of whether CAMcare is entitled to a damages cap as "nonprofit hospital" under N.J.S.A. 2A:53A-8.

## III.   STANDARD OF REVIEW[3]

A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) must be granted if the court lacks subject matter jurisdiction to hear a claim. In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012). When a defendant files a motion

---

[2] Plaintiff subsequently filed a motion for leave to file a sur-reply [Docket Item 18], which Defendant did not oppose. For good cause, the Court will grant Plaintiff's motion nunc pro tunc.

[3] "[I]t is familiar law that a federal court always has jurisdiction to determine its own jurisdiction." United States v. Ruiz, 536 U.S. 622, 628 (2002) (citing United States v. Mine Workers, 330 U.S. 258, 291 (1947)); White-Squire v. U.S. Postal Serv., 592 F.3d 453, 456 (3d Cir. 2010). This Court will therefore assume jurisdiction to decide the issues presented by the Government's motion.

under Rule 12(b)(1), the plaintiff bears the burden of
establishing subject matter jurisdiction for the sake of
remaining in federal court. Gould Elec., Inc. v. United States,
220 F.3d 169, 178 (3d Cir. 2000).

The parties do not contest that Defendant has presented a
factual challenge to subject matter jurisdiction. (Def. Br. at 3
n.1.) See Int'l Ass'n of Machinists & Aerospace Workers v.
Northwest Airlines, Inc., 673 F.2d 700, 711 (3d Cir. 1982)
("Northwest's motion was supported by a sworn statement of
facts. It therefore must be construed as a factual, rather than
a facial attack on the court's subject matter jurisdiction.").
Unlike a "facial attack," which considers the Complaint on its
face for a jurisdictional defect, see Constitution Party of Pa.
v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014), a factual
challenge presents an argument that the facts of the case do not
support the asserted jurisdiction. Id.; see also Cunningham v.
Lenape Reg'l High Dist. Bd. of Educ., 492 F. Supp. 2d 439, 447
(D.N.J. 2007) ("[I]n a factual challenge to jurisdiction, the
defendant argues that the allegations on which jurisdiction
depends are not true as a matter of fact.")

In a factual attack, "the court accords the plaintiff's
allegations no presumption of truth." S.R.P. ex rel. Abunabba v.
United States, 676 F.3d 329, 343 (3d Cir. 2012) (internal

quotation marks and citation omitted); <u>see also</u> <u>Cestonaro v. United States</u>, 211 F.3d 749, 752 (3d Cir. 2000). The district court looks beyond the allegations in the complaint and weighs evidence outside the pleadings. Thus, "[i]t is incumbent upon the plaintiff to respond to the defendant's sworn factual assertions" with something more than conclusory responses. <u>Northwest Airlines</u>, 673 F.2d at 711.

Citing to a Fifth Circuit case, Defendant asserts that the jurisdictional question should be reviewed under the summary judgment standard. (Def. Br. at 5 (citing <u>Tindall v. United States</u>, 901 F.2d 53, 55 & n.5 (5th Cir. 1990)).) Plaintiff does not directly address the applicable standard of proof but adopts Defendants' position. (Pl. Br. at 43 (arguing that summary judgment should not be entered on the question of whether CAMcare is entitled to a damages cap under the NJCIA).) In the Third Circuit, however, courts use a more "relaxed standard of proof." <u>S.R.P.</u>, 676 F.3d at 344. "By requiring less of a factual showing than would be required to succeed at trial, district courts ensure that they do not prematurely grant Rule 12(b)(1) motions to dismiss claims in which jurisdiction is intertwined with the merits and could be established, along with the merits, given the benefit of discovery." <u>CNA v. United States</u>, 535 F.3d 132, 145 (3d Cir. 2008).

IV.   DISCUSSION

A. Under the FTCA, the United States is Liable to the
   Same Extent as a Private Individual Under State Law
   and May Assert Defenses Under the NJCIA

The long-standing doctrine of sovereign immunity provides
that "the United States may not be sued without its consent and
that the existence of consent is a prerequisite for
jurisdiction." United States v. Mitchell, 463 U.S. 206, 212
(1983). Sovereign immunity shields the United States and its
agencies from suit and acts as a jurisdictional bar which
deprives the courts of subject matter jurisdiction. F.D.I.C. v.
Meyer, 510 U.S. 471, 475 (1994); Stehney v. Perry, 101 F.3d 925,
933 (3d Cir. 1996). The United States may waive immunity and
consent to be sued. The terms of its waiver, however, must be
"unequivocally expressed," United States v. Nordic Village, 503
U.S. 30, 33 (1992), for "[t]here can be no consent by
implication or by use of ambiguous language." Library of
Congress v. Shaw, 478 U.S. 310, 318 (1986); see also United
States v. Sherwood, 312 U.S. 584, 586 (1941). Additionally, our
courts have said that waivers should not be liberally construed;
rather, they must be "construed strictly in favor of the
sovereign . . . and not enlarged beyond what the language
requires." Nordic Village, 503 U.S. at 34 (quoting McMahon v.
United States, 342 U.S. 25, 27 (1951) and Ruckelshaus v. Sierra

8

<u>Club</u>, 463 U.S. 680, 685 (1983)).

With the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 <u>et</u> <u>seq.</u>, Congress effected a "limited waiver" of [federal] sovereign immunity against tort actions. <u>United States v. Orleans</u>, 425 U.S. 807, 813 (1976). Under 28 U.S.C. § 1346(b), the United States may be sued for damages in federal court for any Government employee's "negligent or wrongful act or omission" which causes personal injury or death. The FTCA is the exclusive waiver of sovereign immunity for actions sounding in tort against the United States, its agencies, employees, and officers acting within their official capacity.

Because section 1346(b) makes the United States answerable for its employees' torts, the Government is substituted as a defendant if the tortious conduct is deemed to have been committed by an "employee of the government" "acting within the scope of his employment" at the time of the incident. 28 U.S.C. § 2679(b)(1) & (d)(1).[4] Here, neither party disputes that CAMcare and the CAMcare employees named as defendants in this action are Government employees and were acting within the scope of their

---

[4] Specifically, 28 U.S.C. § 2679(b)(1) provides absolute immunity to federal employees for actions committed within the scope of their employment, and requires any FTCA claim for money damages to be brought against the United States. <u>See</u> <u>Lomando v. United States</u>, 667 F.3d 363, 373 (3d Cir. 2011).

employment during all relevant times.[5] The United States is thus properly substituted as a defendant for Plaintiff's FTCA claims and answers for the conduct of CAMcare and the individual defendants. (See Def. Br. at 7-8; Pl. Br. at 19.)

As a defendant, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. In this case, because the United States stands in the shoes of CAMcare, it is liable to the same extent that a similarly-placed private healthcare employer would be for the torts of its employees. See Lomando v. United States, 667 F.3d 363, 375 (3d Cir. 2011).

The FTCA further specifies that conduct is actionable under "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The statute's reference to the "law of the place" "means law of the State – the source of substantive liability under the FTCA." F.D.I.C., 510 U.S. at 478. In other words, whether a tort claim is cognizable under the FTCA depends upon "whether a private individual under like circumstances

_____

[5] As a federally qualified heath center, CAMcare and its employees who are named in this suit are considered Public Health Service ("PHS") employees for purposes of the FTCA, pursuant to the Public Health Service Act. See 42 U.S.C. § 233(g). Congress explicitly permitted FTCA suits against PHS employees, but made the FTCA the "exclusive" remedy for tortious acts committed by those employees within the scope of their employment. 42 U.S.C. § 233(a).

would be liable under state law." United States v. Muniz, 374 U.S. 150, 153 (1963); In re Orthopedic Bone Screw Prod. Liability Litig., 264 F.3d 344, 362 (3d Cir. 2001) ("'[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law.'" (quoting Reo v. U.S. Postal Serv., 98 F.3d 73, 78 (3d Cir. 1996))).

State law also informs which immunities and defenses the United States may assert. See Reo, 98 F.3d 73, 76 ("State law [] governs both the creation of liability and the effect of a purported release of liability."). The FTCA permits the United States to assert "any other defenses to which [it] is entitled," 28 U.S.C. § 2674,[6] which the Third Circuit has interpreted to "include not only those defenses the United States may invoke independently, but also any defenses available to a similarly-placed private employer answering for the alleged torts of its employee." Lomando, 667 F.3d at 376. Thus, any immunities and defenses available to a private employer under state law will

---

[6] Although not relevant for purposes of resolving the instant motion, the first part of the provision entitles the United States to assert "any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim." 28 U.S.C. § 2674. Thus, in addition to defenses that may be raised by a private employer in the same position, section § 2674 allows the United States to avail itself of any judicially- or legislatively-based immunity to which the individual physicians and nurses would be entitled. Lomando, 667 F.3d at 375.

also be available to the United States. See Rodriguez v. United States, 823 F.2d 735, 745 (3d Cir. 1987) (New Jersey comparative negligence law governed limitations on recovery against the United States in FTCA case); Ewell v. United States, 776 F.2d 246, 249 (10th Cir. 1985) ("[I]mmunities created by state law which are available to private persons will immunize the federal government because it is liable only as a private individual under like circumstances.").

The Court therefore rejects Plaintiff's argument that state law immunities that are available to CAMcare should not be made available to the United States under the FTCA. (See Pl. Br. 11-21.) First, the Court is not persuaded by Plaintiff's citation to Starns v. United States, 923 F. 2d 34, 37 (4th Cir. 1991), for its assertion that "state immunity 'is incapable of telling us to what extent the federal government has waived its sovereign immunity.'" (Pl. Br. at 20.) The precise issue here is not the source and extent of the Government's waiver of immunity, since there is no dispute that the FTCA provides a limited waiver of sovereign immunity. Because FTCA tells us that the waiver operates "to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, the real question that determines the United States' liability, as Stark correctly notes, is the liability of a private individual under like

12

circumstances, which must be determined by "'the law of the place where the [negligent] act or omission occurred.'" Stark, 923 F.2d at 37 (quoting 28 U.S.C. § 1346(b) and concluding that a malpractice liability cap set forth in a Virginia state statute could limit recovery against a federal veterans hospital even though the statute only applied to health care facilities licensed by the Commonwealth, because "Virginia law, as applied to private parties 'in like circumstances,' determines the extent of the government's liability in this case.").

In this case, the allegedly tortious conduct causing Lakeisha Mayner-Dupont's death occurred entirely in New Jersey. Thus, in order to decide whether and to what extent the United States may be held liable for the actions of CAMcare and its employees, the Court must determine the liability of – and immunities and defenses available to – a similarly-placed private healthcare employer in like circumstances under New Jersey law.

Plaintiff argues that there is no reason why immunity under the New Jersey Charitable Immunity Act, which is meant to protect nonprofit organizations and hospitals like CAMcare, should still apply in this case now that the United States has been substituted in for CAMcare. (See Pl. Br. at 17-20.) On this question, however, the law is long-settled: the United States is

13

entitled to assert "any defenses available to a similarly-placed private employer answering for the alleged torts of its employee." Lomando v. United States, 667 F.3d 363, 376 (3d Cir. 2011). In Lomando, the Third Circuit specifically noted that such defenses "may be rooted in the common law, or they may be created statutorily, as in the case of immunity conferred on charitable nonprofit entities and their volunteers *under the NJCIA*," which is the exact statute under which Defendant claims immunity here. Id., 667 F.3d at 376 (emphasis added). Lomando is definitive on the question of whether the United States may assert immunities under the NJCIA that would be available to CAMcare, and this Court is not inclined to hold otherwise, particularly since Plaintiff's argument has also been rejected by several districts judges in New Jersey. See, e.g., Young v. United States, --- F. Supp. 3d ----, 2015 WL 9592442, at *8 (D.N.J. Dec. 2, 2015) (holding that United States may assert any immunity defense under the NJCIA that is available to an organization such as CAMCare); Witty v. United States, 947 F. Supp. 137, 141-143 (D.N.J. 1996) (holding that United States, in FTCA action, may rely on immunities available to a private automobile owner covered by New Jersey's no-fault insurance law, even though it was not literally the "owner" of an automobile under the New Jersey statute).

14

**B. The New Jersey Charitable Immunity Act**

The New Jersey Charitable Immunity Act, N.J.S.A. 2A:53A-7 et seq., was enacted in 1959 to codify the long-standing New Jersey common law doctrine of charitable immunity, "to provide immunity for all nonprofit corporations organized for religious, charitable, educational, or hospital purposes from negligence suits brought by any beneficiary." Parker v. St. Stephen's Urban Dev. Corp., 579 A.2d 360, 323 (N.J. Super. Ct. App. Div. 1990) (internal quotations and citation omitted). The underlying purpose of the Act is protect and encourage private philanthropy to assure the continued provision of services that benefit the general welfare, and to relieve the government of the burden of providing them. See Ryan v. Holy Trinity Evangelical Lutheran Church, 815 A.2d 419, 424 (N.J. 2003); Bieker v. Cmty. House of Moorestown, 777 A.2d 37, 41-42 (N.J. 2001) (describing the history of charitable immunity in New Jersey).

Of particular relevance to this case is N.J.S.A. 2A:53A-7(a), which provides absolute immunity from liability to nonprofit "corporation[s], societ[ies], or association[s] organized exclusively for religious, charitable or educational purposes."[7] This provision of the NJCIA provides absolute

---

[7] N.J.S.A. 2A:53A-7(a) states:
  No nonprofit corporation, society or association
  organized exclusively for religious, charitable or

immunity from tort liability where the entity being sued (1) is a non-profit corporation; (2) is organized exclusively for religious, charitable or educational purposes; and (3) was advancing those purposes at the time of the alleged injury to the plaintiff-beneficiary. <u>Bieker</u>, 777 A.2d at 42; <u>see also</u> <u>Nazzaro v. United States</u>, 304 F. Supp. 2d 605, 610 (D.N.J. 2004) (reciting the three required elements). The inquiry under the second prong[8] is generally a "fact-sensitive" one, and examines an organization's source of funds, its "'aims, its origins, and its method of operation in order to determine whether its

---

educational purposes or its trustees, directors, officers, employees, agents, servants or volunteers shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association . . . .

[8] The parties do not dispute whether CAMcare was incorporated as a non-profit or whether it was advancing its stated purpose at the time of Mayner-Dupont's treatment, and for purposes of this motion, the Court notes that the first and third prongs have been met. Defendant has submitted evidence that CAMcare was incorporated in 1978 as a nonprofit corporation with 501(c)(3) status under the name Cooper Medical Center Ambulatory Care, Inc. Its name was changed in 1980 to CAMcare Health Corporation. (<u>See</u> Bryant Decl. [Docket Item 10-4] ¶ 4; Certificate of Incorporation, Ex. A to Bryant Decl. [Docket Item 10-5].) Although CAMcare is afforded tax-exempt status as a nonprofit organization, the Court readily agrees with Plaintiff that its status under the tax code does not decide the ultimate question of whether it enjoys immunity under the NJCIA. (<u>See</u> Pl. Br. at 31-37.)

dominant motive is charity or some other form of enterprise.'"
Ryan v. Holy Trinity Evangelical Lutheran Church, 815 A.2d 419,
425 (N.J. 2003) (quoting Parker v. St. Stephen's Urban Dev.
Corp., 579 A.2d 360, 364 (N.J. Super. Ct. App. Div. 1990)); see
also Abdallah v. Occupational Ctr. of Hudson Cty., Inc., 798
A.2d 131, 134 (N.J. Super. Ct. App. Div. 2002) (analysis
"take[s] into account the organization's source of funds as a
critical element of charitable status.").[9]

In addition to providing absolute immunity to charitable
organizations, the NJCIA also protects hospitals. N.J.S.A.
2A:53A-8 states:

> Notwithstanding the provisions of [N.J.S.A. 2A:53A-7],
> any nonprofit corporation, society or association

---

[9] With respect to the source of funds, the New Jersey Supreme
Court has held generally that "an organization claiming immunity
under the Act must demonstrate some level of support from
charitable donations and/or trust funds as it is those sources
of income the Act seeks to protect." Bieker v. Cmty. House of
Moorestown, 777 A.2d 37, 44 (N.J. 2001); see also Parker, 579
A.2d at 326 (noting that "[p]rivate charitable contributions
have been involved at least in part in every case in which
immunity has been conferred."). New Jersey courts have been
reluctant to grant charitable status to corporations that rely
exclusively on federal money to fund their programs and devote
none of their own efforts to fundraising or charitable
contributions. Such organizations, the court has explained, are
"created, not to lessen the burden on government, but to obtain
as much money from the government as possible" in order to run
their projects exclusively with that money. Ryan, 815 A.2d at
425. They act merely as "conduit[s] for federal [] money" and do
not serve the state "without hope or expectation of
remuneration" for the services they perform. Thus, they are "no
more entitled to charitable immunity than the government
itself," and may not be considered charities. Parker at 364-65.

17

> organized exclusively for hospital purposes shall be
> liable to respond in damages to such beneficiary who
> shall suffer damage from the negligence of such
> corporation, society or association or of its agents
> or servants to an amount not exceeding $250,000,
> together with interest and costs of suit . . . .

N.J.S.A. 2A:53A-8 (emphases added). Unlike 2A:53:A-7(a), which applies to nonprofit entities "organized exclusively for charitable, religious, or educational purposes," 2A:53A-8 applies to nonprofit corporations "organized exclusively for hospital purposes."

"The most prominent distinction between nonprofit entities organized exclusively for charitable, religious, or educational purposes and nonprofits organized exclusively for hospital purposes is that the former are immune from liability while the latter are subject to liability for negligence, albeit with a cap on its damages." Kuchera v. Jersey Shore Family Health Ctr., 111 A.3d 84, 89 (N.J. 2015). By the "plain language of N.J.S.A. 2A:53A-7 and -8," a hospital is subject to limited liability "if it is formed as a nonprofit corporation, society, or association, is organized exclusively for hospital purposes, was promoting those objectives and purposes at the time the plaintiff was injured, and the plaintiff was a beneficiary of the activities of the hospital." Id. at 90.

The Court must now decide whether CAMcare, and by extension the United States, qualifies as a charity and is immune from

18

suit. The United States argues that CAMcare fits within the definition of a charitable organization under N.J.S.A. 2A:53A-7(a), and argues in the alternative that CAMcare should be considered a nonprofit hospital under N.J.S.A. 2A:53A-8 subject to limited liability. The Court addresses each argument in turn.

### C. CAMcare Is Not Entitled to Absolute Immunity

In support of its position that CAMcare is a corporation organized exclusively for "charitable purposes," Defendant points to CAMcare's mission statement to provide comprehensive health care services to low-income patients regardless of a patient's insurance status or ability to pay; its provision of free health care programs and events to the community; and its funding, which is derived from a combination of patient revenue and federal, state, and other grants. (Def. Br. at 15-28.) Plaintiff argues that 2A:53A-7(a) does not apply because CAMcare's funding does not rely on charitable contributions from private individuals and was not organized "exclusively for charitable purposes." (Pl. Br. at 21-30.)

The New Jersey Supreme Court was recently confronted with a question similar to the one the Court faces today: whether the Jersey Shore Family Health Center, a nonprofit clinic which provides medical care for those "'who are uninsured, underinsured, without a primary care physician and/or who lack

19

access to regular medical care,'" was an entity organized for "charitable purposes" under 2A:53A-7(a) or exclusively for "hospital purposes" under 2A:53A-8. Id. at 86-87. The appellate court below had held that the defendant was engaged in a "hybrid purpose" of maintaining a hospital and providing educational services and operating charitable health clinics, and thus qualified as a "charitable organization" within the meaning of 2A:53A-7(a).

The New Jersey Supreme Court reversed, holding that the Jersey Shore Family Health Center was still a hospital, despite providing educational and charitable services. The Court explained that the function of a hospital had evolved over time, requiring the Court to expand its conception of "hospital purposes" to take these changes into account. A hospital was no longer "simply a facility where medical professionals treat their patients," but "a place where members of the community not only seek emergency services but also preventative services, therapy, educational programs, and counseling." Id. at 92. The provision of charity care, the Court noted, was now also a "core function of a hospital." Id. at 93. Under this expanded definition, the defendant was a hospital within the meaning of N.J.S.A. 2A:53A-8 rather than a charity entitled to absolute immunity under N.J.S.A. 2A:53A-7(a).

CAMcare shares many of the same characteristics as the nonprofit clinic in Kuchera. In support of its status as a charitable organization, Defendant notes that "CAMcare's mission is to offer health care services to all patients, regardless of insurance status or ability to pay." (Def. Br. at 19.) Defendant also notes that CAMcare "provides a variety of services to its patients," including 24-hour emergency medical coverage, primary care, preventive care, and "related support and enabling health services." (Id. at 23.) CAMCcare also offers a variety of health education events to the community, including on-site and off-site classes dedicated to specific health topics, as well as special services such as TB screening, a bilingual staff, social work and counseling services, nutritional services, a Medicaid eligibility worker, shelter and food assistance, and free transportation for certain qualified patients. (Id. at 23-24.) Defendant additionally notes that approximately 64 percent of CAMcare's patients were Medicaid recipients in 2014, and that the hospital has a sliding discount policy for patients who are unable to pay. (Id. at 25.)

None of the factors cited by Defendants demonstrate that CAMcare is unique from the typical modern hospital described in Kuchera that provides a range of inpatient and outpatient health services, special services, and programs to address the medical

and public health needs of the community in which it is located. CAMcare's activities are "consistent with the nature of modern health care and a hospital's role as a facility that engages in care for more than the acutely ill or injured person." Kuchera, 111 A.3d at 93; see also Hunterdon Med. Ctr. v. Twp. of Readington, 951 A.2d 931, 945 (N.J. 2008) (expanding the meaning of "hospital purpose" in the context of tax exemption to cover the "larger role" of a hospital as an "expected" and "legitimate" "provider of numerous patient services"). Nor is it unusual that CAMcare provides these services to those who cannot afford it, since "every acute care hospital in [New Jersey] is required to provide care to anyone who seeks care without regard to the ability to pay." Id. at 93 (citing N.J.S.A. 26:2H-18.64 ("No hospital shall deny any admission or appropriate service to a patient on the basis of that patient's ability to pay or source of payment.")). As the New Jersey Supreme Court noted, the provision of charity care is a "core function of a hospital," and does not transform an entity organized as a hospital into a charitable organization.

The Court also notes that Plaintiff's suit stems from the alleged misdiagnosis and treatment she received as a patient, and not from an ancillary service or program administered by the hospital. Unlike the plaintiff in Kuchera, who was injured while

22

attending a free eye screening exam that was held at the hospital, see Kuchera, 111 A.3d at 85, the Complaint does not suggest that Defendant was acting in any charitable capacity during the period of Plaintiff's treatment. Rather, Plaintiff alleges that Defendant was negligent in performing a core hospital function: diagnosing and treating Mayner-Dupont for cervical cancer. (See Compl. ¶¶ 12-13.) There is no indication that Mayner-Dupont received treatment as part of a separate charitable program operated the hospital, or that any of the individually named Defendants were volunteers during the period of treatment.[10] Thus, the facts as alleged point even more strongly in favor of treating CAMcare as a hospital rather than a charitable institution.

Although neither party cited to Young v. United States, --F. Supp. ---, 2015 WL 9592442 (D.N.J. Dec. 2, 2015), the Court finds that case most instructive. CAMcare was a defendant in a similar FTCA action in Young, and the court addressed whether CAMcare qualified for absolute charitable immunity or whether it was a hospital N.J.S.A. 2A:53A-8 and qualified for a cap on damages. The Government made the same argument in that case that

---

[10] Indeed, the Complaint clearly states that the individual doctors and nurses "were employees of CamCare Health Corporation and therefore covered under the FTCA at the time of the care and treatment at issue." (Compl. at 5, ¶ 14; see also id. at 6 , ¶ 1.)

it makes here: that CAMcare was organized exclusively for charitable purposes because it "'provides comprehensive health services to underserved families – regardless of insurance status or ability to pay – in the City of Camden and throughout Camden and Gloucester Counties.'" 2015 WL 9592442, at *9. The district court disagreed. Citing <u>Kuchera</u>, the court noted that the provision of health services to underserved families was "the very definition of charity care," which is a "core function" of the modern hospital. To find that CAMcare was a charity entitled to absolute immunity because it provides free medical services, said the court, "would be contrary to the settled state law." <u>Id.</u>

Defendant points to CAMcare's bylaws in an attempt to show that CAMcare is organized for charitable purposes, but the bylaws in fact undermine Defendants' argument. The corporate purpose section of the bylaws state that CAMcare was formed to provide primary health care services; to provide supplemental health care services "necessary for the adequate support of primary health care services," including, for example, home health services, public health services, nutrition education, health education services, social services, mental health services, and therapeutic radiologic services; "to provide information on the availability and proper use of health

24

services"; and to apply for and receive grants for projects to develop and operate community health care centers that serve medically underserved populations. (CAMcare Bylaws, Ex. C to Bryant Decl. [Docket Item 10-5], Art. II, Sect. 1.) Each of these statements mention "health care services" and other services provided by a modern day hospital. The "Mission Statement" on the cover of the bylaws also declares that CAMcare's mission is "[t]o provide high quality comprehensive *primary health care* to the families we serve." (Id. at 1.) There is no mention of providing any type of charitable service.

For all the reasons above, the Court finds that the nonprofit hospital CAMcare is not an entity organized exclusively for charitable purposes within the meaning of N.J.S.A. 2A:53A-7(a). Because the United States is liable "in the same manner and to the same extent" as CAMcare, 28 U.S.C. § 2674, the United States does not qualify for absolute immunity under the NJCIA.[11] Accordingly, the Court will deny the Government's Motion to Dismiss.

### D. The Court Will Deny Defendant's Motion for Partial Summary Judgment on whether CAMcare is Subject to a Damages Cap of $250,000 under the NJCIA

---

[11] Thus, the Court will also reject Defendant's argument that, under N.J.S.A. 2A:53A-7(a), Defendant is immune from liability for the negligence of its employees because CAMcare is absolutely immune. (Def. Br. at 30-32.)

The Court addresses only briefly Defendant's argument that, even if CAMcare is not entitled to absolute immunity, partial summary judgment should be granted in Defendant's favor on the question of whether CAMcare is a nonprofit hospital under N.J.S.A. 2A:53A-8 subject to the $250,000 damages cap. Plaintiff disagrees and urges the Court to permit further discovery to determine whether CAMcare is a "hospital" as defined by the New Jersey Administrative Code, and whether it is a non-profit rather than a for-profit entity.

Under Fed. R. Civ. P. 56(d), the Court is permitted to either deny or defer ruling on the motion for summary judgment to permit for additional discovery. See Fed. R. Civ. P. 56(d)(1)-(2). Several factors recommend against granting summary judgment at this stage. First, the court "must give a party opposing summary judgment an adequate opportunity to obtain discovery." Radich v. Goode, 886 F.2d 1391, 1393 (3d Cir. 1989); Dowling v. City of Philadelphia, 855 F.2d 136, 139 (3d Cir. 1988). This case is still at the early stages of litigation, and discovery has not yet commenced. Although the law and record, as currently presented by Defendant, strongly support Defendant's position,[12] Plaintiff has requested and should be given a full

---

[12] The Court is skeptical that discovery would reveal that CAMcare is not a nonprofit hospital under N.J.S.A. 2A:53A-8. By the "plain language" of N.J.S.A. 2A:53A-8, a hospital is subject

26

opportunity to seek discovery into CAMcare's status and present

his best argument for why CAMcare does not qualify as a

"nonprofit hospital."[13] Defendant's partial motion for summary

---

to limited liability "if it is formed as a nonprofit
corporation, society, or association, is organized exclusively
for hospital purposes, was promoting those objectives and
purposes at the time the plaintiff was injured, and the
plaintiff was a beneficiary of the activities of the hospital."
Kuchera, 111 A.3d at 90 (citing Hardwicke v. Am. Boychoir Sch.,
902 A.2d 900, 916 (N.J. 2006)). Defendant has presented evidence
that CAMcare was organized as a nonprofit with 501(c)(3) status,
and neither party seriously disputes that Mayner-Dupont was a
beneficiary of the hospital at the time of her injury because
she was being evaluated and treated by the hospital and its
employees. Moreover, as discussed supra, the evidence
demonstrates that CAMcare may be considered an entity "organized
exclusively for hospital purposes."
    Other courts in this state that have addressed this issue
have found that a nonprofit hospital like CAMcare falls squarely
within the rubric of N.J.S.A. 2A:53A-8. See, e.g., Hottenstein
v. City of Sea Isle City, 981 F. Supp. 2d 292, 295 (D.N.J. 2013)
(finding that Atlanticare Regional Medical Center, organized as
a nonprofit, was entitled to the damages cap under N.J.S.A.
2A:53A-8); Mottola v. City of Union City, 2006 WL 2177405, at *2
(D.N.J. July 31, 2006) (crediting affidavits that Greenville
Hospital and Meadowlands Hospital Center were nonprofit
hospitals and finding same); Kuchera v. Jersey Shore Fam. Health
Ctr., 111 A.3d 84, 94 (N.J. 2015) (finding same with respect to
the Jersey Shore Family Health Center); Winters v. Jersey City,
293 A.2d 431, 434 (N.J. Super. Ct. App. Div. 1972) (finding same
with respect to municipally owned hospital and noting that "the
broad objective of the Legislature in the enactment of N.J.S.A.
2A:53A-8 was to limit the liability of all nonprofit
hospitals").
    Not only would Plaintiff need to distinguish these cases,
he would need to make a persuasive argument for why another
court in this district was wrong when it found that CAMcare in
particular falls within 2A:53A-8. See Young v. United States, --
F. Supp. ---, 2015 WL 9592442 (D.N.J. Dec. 2, 2015).
[13] Although there is a presumption in this Circuit that a party
seeking additional time for discovery must, under Fed. R. Civ.
P. 56(d), file an "affidavit or declaration" to state with

judgment was also made as an alternative argument to its motion to dismiss, and the main focus of Defendant's motion was not directed at this position. Thus, both parties stand to benefit from additional time for further research and to flesh out and refine their arguments.

A ruling on the applicability of N.J.S.A. 2A:53A-8 is also unnecessary at this time to resolve the present 12(b)(1) motion. While N.J.S.A. 2A:53A-7(a) precludes any damages action against a charitable organization, N.J.S.A. 2A:53A-8 merely provides a limitation on recovery; it is not a bar to the Court's exercise of jurisdiction. Whether Defendant is subject to a damages cap under 2A:53A-8 has no impact on the jurisdictional analysis. Subject matter jurisdiction having been established, the Court finds no persuasive reason to reach the issue of damages today.

Accordingly, the Court will, at this time, deny Defendant's motion for partial summary judgment without prejudice to renewal following a period of discovery. The question of whether CAMcare

---

specificity what information is needed, see Bradley v. United States, 299 F.3d 197, 206 (3d Cir. 2002), which Plaintiff did not do, this is a matter that "falls squarely within the discretion of this Court." Young, 2015 WL 9592442, at *10. "[B]y its very nature, the summary judgment process presupposes the existence of an adequate record." Doe v. Abington Friends Sch., 480 F.3d 252, 257 (3d Cir. 2007). In this case, Plaintiff has not yet had any opportunity to seek discovery and cannot adequately respond to Defendant's summary judgment motion. The Court therefore properly exercises its discretion and declines to rule on Defendant's partial summary judgment motion.

qualifies as a nonprofit hospital is related to the question of damages, and Plaintiff will be permitted to seek relevant documents and testimony through the regular course of discovery. See Fed. R. Civ. P. 26(b)(1).

**V.   CONCLUSION**

For the foregoing reasons, the Court will deny Defendant's motion to dismiss and will also deny without prejudice Defendant's motion for partial summary judgment. The accompanying Order will be entered.


**June 23, 2016**                    **s/ Jerome B. Simandle**
Date                                 JEROME B. SIMANDLE
                                     Chief U.S. District Judge